The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and His Honorable Court. Good morning everyone. Please be seated. The panel has before it a total of six cases today. Three are being submitted on the briefs without oral argument. Those submitted appeals are Appeal 8002, Juneau v. Department of Justice, Appeal 3121, De La Rosa v. Office of Personnel Management, and Appeal 5055, Wilder v. United States. On our argument list we'll hear argument first in Appeal 1269 from 2008, Tyco Healthcare v. Ethicon. Mr. Winteringham, good morning to you. Welcome to the court. Please proceed. May it please the court, Drew Winteringham on behalf of the appellant Tyco Healthcare. There are two agreements involved with the issue before this court. First of all, there's the contribution agreement of April 1, 1999, by which U.S. Surgical contributed its business, including its patents, to Kendall, which later became Tyco Healthcare. Some of its patents. Some of its patents. That's the issue in the case. That's what's at issue. Which patents are in which group, the excluded group or the included group? Correct, Your Honor. The intent was to transfer its patent rights subject to two limited exclusions, one pertaining to specified business units that are not at issue here, the other pertaining to patents which are related to patent applications related to pending litigations. So the issue has to do with the meaning in this context of the words related to. Correct, Your Honor. But there's a list that's missing, right? There is a schedule that is not included with the contribution agreement. According to the section that identifies that schedule, that schedule would include a list of pending litigations and nothing more. So if the schedule had been included, which doesn't exist, if the schedule had been included, it would list the pending litigations and that would affirm, in fact, our position that the patent rights at issue could not be related to the pending litigation. Well, we don't know whether it would affirm your position because the list is missing. We don't know what the list says, right? It's not in the record. So we don't know whether it would affirm or refute your position, right? The reason we say it would affirm our position, Your Honor, I didn't mean to interrupt. The reason we say it would affirm our position is it would list pending litigations. That's what it says it would do, as indeed the settlement agreement listed certain pending litigations. The patent rights at issue have a patent family that at the time of the contribution agreement had only applications. Nothing in the patent family had matured into a patent. Therefore, there were no patent rights to assert in the pending litigation. So even if you were provided with a list of pending litigations, they couldn't include anything in this family. There was nothing to assert. Moreover, it's undisputed that the pending litigations that were at issue have nothing to do with ultrasonic scalpels, which is the subject matter of the patent suit. But that's the issue, isn't it, what's meant by related to. Correct. They could have been brought in based on later issues. Correct. Well, what's your foundation for saying that family lineage is the key determinant here? I can answer that in two ways, Your Honor. First of all, when you say relating to a patent litigation, our position is that does have an honorary meaning. To a patent practitioner, that means clearly the patents that are asserted in the litigation relate to the pending litigation. What else could relate to the pending litigation? Those in the patent family. Why? Because you turn to the patent family and you look to see what the disclosures say, because they have common disclosures. Things that are stated in the file history may impact the scope of the claims as they're being asserted and interpreted by the court. And indeed, determinations by the court may impact the validity and scope of the related family. Well, I couldn't relate it to equally mean that the subject matters are related, the same technology. Even if I was assuming that to be true, in this case, it's undisputed that the patent rights at issue pertain to ultrasonic scalpels, and there were no pending litigations involving ultrasonic scalpels at the time. So even if you take it as perhaps related to technology, however you define related to, it wouldn't include the patent rights at issue. And we're talking about these man and master patent family. So no matter how you define it, it simply can't relate to what's at issue, and that's ultrasonic scalpel patents, which also did not mature into a patent to assert. So it simply couldn't relate to a patent for that reason. I don't understand why it's significant that certain later issued patents were only in the application stage at a certain point in time. Why does that matter? The point is that as of April 1, 1999, when the contribution agreement was entered into, what existed as of the patent rights at issue now was only an application. So what? I thought the agreement covered applications or issued patents. It does. Well, then why does it make any difference? Because in this case, if in your patent family, all you have is an application. Now, if we accept your idea that the family is the limitation, you don't need all the rest, you just win because of the family. If we don't accept your idea that the family is the determinant, then it's a different case, and I think you have a problem. Assume for the moment that we don't accept your idea that the family is the key, then what? Okay, and then what I'm saying is no matter how you define related to, it couldn't include the patent rights at issue. Why not? Because there was nothing to assert, and their technologies unrelated.  Okay. What the Court said was that because they are, and what the Court's reasoning was, that because there was a settlement agreement, including a covenant not to sue, which included these applications under the covenant not to sue, necessarily they related to the pending litigations because they were part of the settlement. That was the basis of finding what was related to. What's wrong with that? What's wrong with that is that, first of all, they clearly did not, were not involved in those litigations. They were only involved, at most, in the settlement of the litigations. Oh, if I'm in a litigation on patent A, and the other party and I settle, we're allowed to include other patents in the settlement agreement, and once we agree with one another to do so, it seems like those additional patents should be considered related to the litigation because they were part of the resolution of the litigation, the settlement agreement. Let's see what happens under that construct. We want to give due credence to the intent of the parties in the contribution agreement. If we accept what you say as the way to do the evaluation, which means that any patent rights that are part of the settlement because of a covenant not to sue would not be transferred on the contribution agreement, would that result in absurd results because under the contribution agreement section 1.1, the intent was to transfer U.S. Surgical's business, including patents other than the business unit, particular business units and those related to patent litigation. If we accept the interpretation that related to means anything part of the covenant not to sue, well, the covenant not to sue is on U.S. Surgical's entire patent portfolio, which means that there's nothing transferred. So that should be the intent of the parties. No, it doesn't mean that there's nothing transferred. All sorts of other assets were transferred, but maybe not patents. But 1.1 makes clear that the transfer is to include patent rights, and indeed inventions, technology, and all that. What's the language in 1.1 that you're referring to? I didn't remember that, so I want to be sure I've got that language in mind. As far as I can see, there's only one reference. There's no patents. The word patents appears once. Yes. In section 1.1, subject to the terms and conditions of this agreement, I'll just do a highlight in that language, U.S. Surgical hereby assigns, transfers, and delivers to the partnership all the assets, properties, and business of every kind and description wherever located, tangible and intangible, and used primarily in the conduct of business. So that would include patents. And then it specifically says, including without limitation, all right, title, and interest of U.S. Surgical in and to and under those patents, inventions, technology, know-how, used primarily in the business. But subject to the agreement. That's right. But if you read the agreement to say, no, we're going to exclude anything subject to that covenant not to sue, nothing is transferred as far as the patent portfolio. Well, why is that an absurd result? Maybe that's a sensible business arrangement. I wouldn't know. Well, that's a good question, whether it's a sensible business arrangement or not. But I thought your argument was it would be an absurd result. Therefore, it can't be what the parties intended. That's one of the arguments. But why not? Why couldn't the parties have intended exactly that? That would mean that U.S. Surgical transferred its entire business with all of its 800-plus patents without any patent protection, notwithstanding the nature of the company and the business defined is research and development into medical devices. So they basically transfer all of their technology without protection whatsoever. That's one of the reasons it's a completely absurd result and couldn't have been what they intended. Can I ask you a technical question about it? It seemed to me maybe I misunderstood in the briefs. The argument was we apply Second Circuit law in this case. Is that what we all agree? But also Delaware law. Correct. Delaware law for interpretation of the contract because the contract is under Delaware law. That's right. And Second Circuit law? That's applying Second Circuit law for this issue of dismissal without prejudice. Did you agree that the two agreements can be read together in order to understand the meaning of each and the intent of the three different parties? I think that the agreements can be read. I don't know what you mean by together, but can be read. Side by side. One informs the meaning of the other. I don't think it's necessary and it's improper because the contribution agreement has a merger clause. It identifies what agreements are part of that agreement and does not identify the settlement agreement. I'm not suggesting that the settlement agreement should be considered incorporated by reference into the contribution agreement. But as I understand the thinking of the magistrate judge and the district judge, they consulted the settlement agreement to understand the meaning of the contribution agreement. That seemed quite logical to me. So my question to you, is that somehow improper? Was that prohibited? They're not allowed to do that. I don't think it was proper. It's parole evidence if the meaning of the contribution agreement is clear on its face. Having said that, they can both be read consistently because you can have the settlement agreement and not withstanding Ethicon's position. But you think it was improper for Judge Robinson to rely at all on anything in the settlement agreement? I think it would have been appropriate to look at the facts provided by the settlement agreement as to the identification of pending litigations. That's a factual issue just like Ethicon points out if you look at what the Dow Index is on a particular day when something is tied to the Dow Index. That's a factual inquiry. So if they looked at the settlement agreement to see which litigations were indeed pending, that's fine. It's when you use the settlement agreement to construe what related to means to say, ah, but the parties entered into this covenant not to sue, and that necessarily means that all of the patents subject to covenant not to sue cannot be transferred. That was what was improper. And that's what leads to these absurd results as well that are inconsistent with the contribution agreement. We can make the settlement agreement and the contribution agreement operate effectively. And that's to say the transfer was effective to Tyco Healthcare. Notwithstanding that transfer, notwithstanding what Ethicon says you couldn't have had a transfer and still give the rights under the covenant not to sue, it's simply not true, there's a present right to transfer the patents under the settlement agreement as long as the obligation is maintained. And that's what's happened. But now I'm confused. I had thought that you had a pretty strong argument that since these agreements were signed on the same day, that you read them together, and the only way that you can make sense out of either one is to recognize that these particular assets, those involved in litigation, had been carved out of the transfer. And therefore that is the agreement which is reviewed and construed on its face narrowly because of the pending litigation. And that that consideration would dominate. But I hear you saying just the opposite. No, not at all. I'm sorry if I led to confusion. The patents that were involved in those pending litigations would not have been transferred. When you say involved, you mean asserted. A charge in the complaint is being infringed, right? Yes, yes. Let's be very precise. You mean asserted. That's the word we use in patent law. But frankly, we could even mean family. But we're talking about, I want to clarify any confusion. The settlement agreement identifies five pending litigations. As to the patents involved in those pending litigations, however we define involved, they were not transferred. But I'm saying you can transfer the rights of the patents in the covenant not to sue as long as the covenant not to sue is maintained. That's what the settlement agreement says. And, indeed, that can be a present transfer, which is exactly what the contribution agreement does. So they're both consistent. I'm not suggesting that the patents that are involved in those litigations were transferred. They're not. It's just all these other patent rights that should have gone to Kendall were transferred. But there is this covenant not to sue, and that's consistent under these agreements. I'd like to keep some of my rebuttal time, so if I could, unless you have further questions, which is more important. We'll restore your rebuttal time. Let's hear from Ms. Muller. Thank you. Good morning to you. Welcome to the court. Good morning. Thank you. May it please the court. Tyco's claim to ownership here really requires rewriting the contribution agreement phrase relating to, to read asserted in any pending litigation. How do you understand related to just the fact that they existed as applications or that the, you're not saying, I didn't recall you saying that this subject matter is related to any of the five cases of litigation. Is that correct? That's correct. But relating to has a plain and unambiguous meaning, which is having a relationship to. And the patents in this suit have a relationship to litigation that was pending between U.S. Surgical Corporation and Ethicon on April 1st, 1999, because they were given in consideration for settling that litigation. Is there, what about the argument, the argument he made, which is that the word patents, therefore, and the other portions of the contribution agreement is empty. I mean that there's no transfer of any patent rights and that's inconsistent with the stated transfer of patents. There's actually no, there's no record evidence on that issue. I heard Mr. Winterham say this morning that at the time U.S. Surgical Corporation had 800 plus patents. The covenant or the consideration for settlement did not go to all of the United States Surgical Corporation's patents. The covenant extended only to what were called Ethicon immune products. And they were products of Ethicon that existed and were being sold on or before April 1st, 1999. So in order to figure out what patent rights were actually transferred to Kendall and what were retained, we would need to have some evidence of what patents U.S. Surgical Corporation had in its portfolio and how they matched up with the Ethicon immune products. And we have zero evidence in the record on that issue. So the argument that none of the patents would have been transferred is without any record support at this point. So your point is they have the burden, they lose. They do have the burden and they don't prove that the intent of the parties to transfer U.S. S.C.'s business is thwarted by this provision. And the intent, of course, was not just, I mean, this is also they're focusing on just the patent transfer. There are many other things that were transferred as part of this agreement. Machinery, office furniture, leases, goods, accounts receivable. So the intent of the parties was clearly to transfer a number of things, including some patent rights subject to this exclusionary clause. But it was also the intent that United States Surgical Corporation would continue to exist and that it would continue to hold even under Tyco's very narrow construction relating to some very important patent rights. No, but you're going back to the answer to my question is that there's no record support for his assertion that it would be an absurd reading of the agreement because there are no other patents. That's correct. Do you understand Judge Robinson to have ruled that there's no jurisdiction or that her dismissal was based purely on the discretionary judgment that this case was not, in her view, appropriate for declaratory judgment treatment? I think her ruling is somewhat of a hybrid in that this case actually went through the conclusion of Tyco's case. Tyco rested its case. And so on the one hand, we have a dismissal. But on the other hand, we have a judgment at the conclusion of Tyco's evidence that it had failed to... Well, that goes to your cross appeal, but I'm still on the appeal. I'm sorry. I'm trying to learn what you understand the foundation of her decision to be. That Tyco failed to prove ownership. That's my understanding of the foundation. Okay. Are you saying then that the subject matter of now in litigation is included within the scope of the definition of the immune products in the broad immunity from suit? There is no dispute that the patents that are asserted in this case are the subject of the immunity that was given as part of the settlement of the prior case. And we know that because they relate to Ethicon products that were on the market at the time. That's correct. The particular products in suit here did not exist in 1999. So they are not immune from suit. I thought you just said they were? The patents that are asserted in this suit are part of the consideration that was given to Ethicon. But that consideration, that covenant not to sue, extended only to the Ethicon products that existed at the time. That was my question. Okay. And that's the answer. The patents in this suit, there's no dispute. The parties agreed that the patents in this suit were part. Certain rights in those patents were granted to Ethicon in consideration for settling a litigation that was pending between U.S. Surgical and Ethicon in 1999. With respect to the immune products? Correct. That's correct. And you say this is not an immune product? The particular products that were charged with infringement in this case are not immune products. That's correct as well. Is it fair to characterize your position as charging the other side not with necessarily lacking ownership in the patents in suit, but having failed to prove that they're the owner? There's, of course, a difference. A failure-of-proof case, not necessarily clear that somebody else owns the patents. You're right. I think there was a failure-of-proof here. That's absolutely right. And part of it is because of the way this issue came up. It came up in the middle of trial. We had never seen a contribution agreement before. The allegations that were in their original pleading provided a different basis for Tyco to be in the suit. And the original complaint said that United States Surgical Corporation is a division of Tyco. And that would give Tyco the right to be in the suit. It came out during cross-examination. Somebody was very careless in drafting the complaint because you instructed us that the two entities, although they have similar names, are actually two separate entities. We did discover that during cross-examination of one of their witnesses at trial, that the corporate structure had not been represented appropriately in the complaint. And that happened on a Friday. It was Saturday night when we got the contribution agreement for the first time. So perhaps there is other evidence. We haven't had a chance to take full discovery on it, obviously, because of the way this issue came up in the middle of trial. But it doesn't matter to you because you didn't have to prove anything. The other side had to do all the proving. That's correct. And in your view, and the judge's, they didn't. That's correct. Anything further? No. Thank you. Would you like a moment or two on the with or without prejudice argument, or should I save my time? It's your time to argue your cross-appeal. I certainly wouldn't deprive you of that. Okay. There are a number of cases which both parties recognize, talk about a general proposition that dismissal for lack of standing is normally without prejudice, particularly where the plaintiff can cure. But this case is distinguished from those because in this case, it was not, there was an adjudication on the merits. The cases that talk about dismissing without prejudice talk about that in the context of something that happens before the plaintiff rests its case. So your whole point here is that if it had been a motion for summary judgment, it could have been dismissal without prejudice. But because this was in the J-Mall context, it can't be? Well, even in the context when the issue came up at trial and Tyco realized that there was a problem with proving ownership, at that point, they could have moved to dismiss the case. And then we would have been arguing about whether that dismissal should have been with or without prejudice. But at that point in time, Tyco chose to go forward and to continue presenting its evidence and to rest its case, hoping but not proving that it owned the patents in suit. And that's an essential element of its damages claim, for example, that has been injured for its request for an injunction. So this is a case that reached the point where Tyco had put in all of its evidence. It made the choice to go to judgment rather than stop the case. And that distinguishes this from really any of the cases that have come before this Court previously. Well, what's the harm if the dismissal remains as ordered by the judge, a dismissal without prejudice? Presumably, at some future date, Tyco might sue Ethicon again. But what's so terrible about that? You might have immunity under the agreements. So even if they could prove ownership, the suit wouldn't last very long. You'd win on summary judgment of immunity. Or maybe they couldn't prove ownership, and the second suit would be thrown out again quite quickly. If the issue is that Ethicon has been put to the cost of mounting a defense once and might have to mount the beginning of a defense a second time, why can't that be accommodated by fee shifting as opposed to reclassifying the dismissal as being a prejudicial dismissal? Because there has been prejudice to Ethicon here. And if this was a case where Tyco had failed to prove entitlement to lost profits, for example, the fact that Tyco could come back in a second trial and bring on an expert that would allow them to prove lost profits doesn't mean that they should get a second chance to do that, having gone to judgment in a first case and failing to prove entitlement to those damages. Similarly here, the distinction is Tyco went to judgment. We laid all of our cards on the table. We cross-examined their experts. They know where their deficiencies are now. If we start over, they get to fix all of those and get a second bite at the apple to our detriment. When Ethicon didn't do anything wrong, we were in a case based on relying on a pleading that misrepresented a corporate structure and in the middle of the trial realized that that was incorrect and we probably didn't have the right plaintiff here. On what basis do we review the District Court's dismissal without prejudice? Is it an abuse of discretion? Is this a legal question that you de novo on what basis? It is an abuse of discretion and that's where the Second Circuit law applies. So Ethicon contends that this was a clear error of judgment for the District Court to dismiss without prejudice. Why isn't it an error of law? Maybe you're making the high jump bar unnecessarily high. If the fact that this case went to judgment as opposed to summary judgment or dismissal motion triggers applicable case law, then why isn't it an error of law rather than an alleged abuse of discretion? It is also an error of law. You're right. Well, that's the de novo review, which is much easier from your standpoint than abuse of discretion. Thank you, Your Honor. So de novo review, it is an error of law that this is a case... Just because it was a final judgment. ...judgment was entered. So I'd like to reserve a few minutes for rebuttal if I may. Sure. Unless you have further questions. All right. Thank you. Mr. Wintringham. Thank you. You're on four minutes. Thank you. I'd first like to respond to the fact that there's no record evidence to show what patents were transferred and which ones weren't. If we accept the court's interpretation that any patent right involved in the Covenant on Tzu necessarily is not transferred, then nothing's transferred. Ethicon argues, however, that it's... How do we know that? How do we know that every patent that USSC owned, all 800 or whatever the number is, fits in this category? How do we know that if we don't have the universe in evidence? Because the Covenant on Tzu specifically says all domestic patents and applications and foreign counterparts. It defines it as everything. Ethicon suggests no, because the Covenant not to sue is only on their existing products. It's only the parts of the patent portfolio that are infringed. Well, that can't be the intent when a party gives a covenant not to sue, because what would that require? In order for a US surgical to determine which patents it has title to and which were transferred, it would have to go ahead and identify all Ethicon products in existence, which the parties were unable to even catalogue, and it says that right in the settlement agreement. They'd have to obtain samples of those products. They'd have to determine what methods of manufacture existed, because you have method claims in the Covenant not to sue. And by the way, we don't have access to their proprietary methods of manufacture. You'd then have to look at the file histories, and you'd have to determine whether or not... what the scope of the claims are, whether or not there is infringement, without the benefit of the court's assistance, which is the only problem. They don't determine when there is infringement. And by the way, in every patent case, one party is wrong as to whether there is infringement. So no party would ever say, when I give a covenant not to sue, what I intend on your existing products under all my patents, that means I'm only giving on the patents that are infringed. So as far as there being record evidence, it can't be the intent of the parties that they intended to give a covenant not to sue, and only those patents which were infringed would be held back, and those which were not would not. Going to the failure to prove ownership. No, we proved ownership. It's proven by the contribution agreement. It's absolutely right. The contribution agreement was provided midway through trial. But what was conveniently overlooked is that Ethicon took the deposition of Mr. Emilio, 36th witness on ownership, 17 months before trial. At that time, and I have the testimony, he identified that there was a transfer from U.S. Surgical to Kendall, which later became Tyco Healthcare. They knew about this transfer. As far as the complaint is concerned, I agree. It's somewhat sloppy. I didn't draft it. It doesn't matter. I'm still counsel for Ethicon. It doesn't matter. I'm counsel for Tyco Healthcare. But the point is, it specifically does say that Tyco Healthcare is the current owner of the U.S. Surgical patents. Now, they had a covenant not to sue from U.S. Surgical. They're now being sued by Tyco Healthcare on something that's indisputably part of the covenant not to sue. So they know they're being sued by Tyco Healthcare, so they had notice there, but also on the deposition 17 months before trial. In fact, at trial, Mr. Maslowski specifically asked Mr. Emilio, aren't those the questions and answers that you gave me at your deposition as to ownership? So where's the agreement? And that's when it was produced. They were given the opportunity to take discovery during trial on that issue. They decided not to. There was nothing to discover at that point because on Saturday the agreement had been turned over. And the point is the judge gave them the opportunity to bring back Mr. Emilio to take his deposition and ask whatever else they wanted on ownership if they wanted. Well, they already had him on the stand. Why do they need to depose him? They had him on the stand for trial, and they had the document. The trial resumed on Monday. I don't understand why it would have made any sense for them to go off on the side and have a deposition. Okay, in case there were any other issues. I want to get quickly to this issue on dismissal with prejudice, if I could. They say that this occurred at the end of the trial, and therefore it should be different than all the plethora of cases that this Court has decided that says ordinarily dismissal should be without prejudice. In fact, again, repeated in the Pittsburgh case in June. As Pittsburgh recognized, there's this universal understanding it should be normally done without prejudice. Now, to say that it's different because it's towards the end of your case or when you rest the case doesn't make any sense. It shouldn't be based on timing. That would prejudice the plaintiff who has a good case on standing but turns out to be wrong. It also would reward the defendant unnecessarily if they think there's an issue on standing to wait until trial, to wait until the resting case and then bring up the issue. That makes no sense. Let's talk about the prejudice. They say it's unlikely we'll go back to the same Court and be able to use the same information. We'll stipulate the same Court. Of course we would. We have a summary judgment determination of infringement by them. We defeated their summary judgment position on invalidity, which is their real position as far as— We're not going to try the case here, so— Understood, but the point is of course we'd go back to the same Court. In fact, if we're right on this appeal, the Court's already said, we resume trial where we left off. If we're wrong, the only thing that changes is damages. That's the only thing that changes, and that changes in every case where you cure standing. So that's the only thing that has to be repeated. So the real prejudice here is if we walk away from this case and we have a party that's been summarily determined to infringe, they walk out scot-free. That's the prejudice. All right. Thank you. Ms. Mullen, you have a little bit of rebuttal on the cross-appeal only. On the cross-appeal issues, it is true that there was some deposition testimony given by one of their witnesses during discovery, which if we knew that they had misrepresented the corporate structure in the complaint, and if we had the contribution agreement in our hands during discovery, we might have interpreted it in a different way. With 20-20 hindsight, having the benefit of the knowledge that came out at trial, the testimony that was given by that witness at his deposition was ambiguous at best. It didn't distinguish between U.S. Surgical Corporation and U.S. Surgical Division. So it's not Ethicon's fault that this issue went to trial. It's Tyco's misleading or inaccurate complaint that caused this issue to go to trial. Well, what happened during the deposition when the transfer was mentioned by the 30B6 witness? Why didn't Ethicon's lawyer say, well, show me the agreement? It can't possibly have been that people were assuming it was an oral agreement to sell all the assets of a functioning company. But it wasn't selling the assets of a functioning company. If you took what was pleaded in the complaint to be true, then by operation of law, as opposed to a written assignment agreement, Tyco Healthcare would have had some ownership in the patents by virtue of owning a division that had ownership of the patents, and that was the distinction. I'd also like to address Mr. Winteringham's argument about being able to cure standing. This is not a case where Tyco can cure standing. This is not a case where Tyco is an exclusive licensee or a co-assinee, and they had a right to be in the case in the first place, but they just need to add another party to perfect that right. They had zero right to bring this case. It's not a matter of curing standing. It's a matter of getting standing. And that also distinguishes it from the cases that have previously come before this court. At least many of the cases. What's the distinction you're drawing between getting versus curing standing? If Tyco were an exclusive licensee with a substantial bundle of rights, but not enough to confer standing in its own name, then it could cure the defect in its standing by adding the United States surgical corporation as a party. In this case, Tyco has zero rights in the patents. It has no standing. If U.S. Surgical was the plaintiff, Tyco Healthcare would not be a proper party. So this is not a matter of curing standing. This is a different situation. Tyco has no standing defect to cure. It has no standing. It shouldn't have been in the case in the first place. Well, what if U.S.S.C. subsequently transferred patents to a third party and then Tyco purchased the patents from the third party? They'd have standing to sue under those patents at that point, wouldn't they? If that happened before the case started and there was an assignment of the patent rights to Tyco, yes, they would have had standing. No, if it happens subsequently. They would have standing in a future suit, not in the suit that's already taken place. They can't retroactively gain standing for the suit that has already gone through judgment. Well, that goes back to the original argument. All right. Anything further? I'm happy to answer any other questions. There being none, we'll declare the argument over. We thank both counsel. We'll take the appeal under advisement.